| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

United States District Court
Southern District of Texas
**ENTERED**
June 18, 2019
David J. Bradley, Clerk

*In re* Herman E. Hoffman, § 
§ Bankruptcy 16-32617, 17-786, 17-787
Debtor. §

---

Herman Hoffman, §
  Appellant, §
§
*versus* § Civil Action H-17-2332
§ Adversary 16-3222
Leslie Maybin, *et al.*, §
§
  Appellees. §

## Opinion on Appeal

1.   *Background.*

Herman E. Hoffman and Kathleen Hoffman owned 211 horses. Five of the horses – four registered Quarter Horses and one registered American Paint Horse – are the subject of the case against Leslie Maybin.

Maybin worked for the Hoffmans from 2010 to 2014. They did not pay him. In early June 2015, Maybin was laid off from his job at an oil and gas company. On June 22nd, he contacted Hoffman – through text message – asking whether he had work for him. Hoffman replied that he did. That day, Maybin went to the ranch to help feed the horses and clean the barns.

The next day, Maybin worked until 2:00 p.m. Nine hours later, Hoffman called him asking if he wanted several horses. Maybin replied that he did and would pick them up the next day. Hoffman told him that if he wanted the horses, he needed to come get them that night. Maybin arrived at the ranch a few hours later.

Hoffman gave Karen Hatch a copy of the bill of sale to give to Maybin. It is backdated to June 8, 2015. It also identifies Hoffman as the seller, Maybin as the buyer, and lists the names of ten horses. It is signed by K. Hoffman.

Maybin says that he understood the exchange to be for money the Hoffmans owed him. He insists that no discussion of payment occurred. In addition, he claims that Hoffman did not

ask him to complete or sign additional paperwork. In fact, Hoffman told him that Karen Hatch, a ranch volunteer, had the original bill of the sale. Hoffman claims he asked Maybin for the return of the paperwork and documents. Maybin says that he gave it to the district attorney.

Shortly after, Maybin picked up five of the nine horses from the barn. He says that because the horses were in "bad shape" and could hardly stand, his trailer could not hold all nine at once.

A Montgomery County constable stopped Maybin on his drive home. The constable asked about the horses. He told Maybin that they were not allowed to be removed from Hoffman's property because they were under investigation. Maybin was instructed not to return to the ranch. Montgomery County investigators arrived at Maybin's home the next morning. They informed him that the horses were "seized in place" and not to be moved.

A veterinarian, Cameron Stoudt, examined the horses when they arrived on Maybin's property. She testified that they were neglected, mistreated, and malnourished. In addition, the horses had no monetary value.

Since Maybin has taken possession of the horses, he has rehabilitated them and paid $800 per day for their veterinary treatment. All five horses are in good health and continue to live on Maybin's property.

On May 19, 2016, Hoffman filed a voluntary petition under Chapter 12 of the Bankruptcy Code. On June 23rd, he filed an adversary proceeding. In his complaint, Hoffman sues Maybin for (1) a declaratory judgment that the horses belong to Hoffman, (2) breach of contract, (3) conversion, and (4) return of the horses, including fraudulent transfer under 11 U.S.C. § 548. On July 31, 2017, Hoffman filed a civil suit.

2.   *Bankruptcy.*

At the bankruptcy hearing, Hoffman argues that he had an oral contract with Maybin because the court did not adopt sale-related documents. The court asked the parties to consider selling the horses.

K. Hoffman testified that Maybin agreed to pay $120,000 – in cash – for the horses. Maybin had recently been laid off. Hoffman did not ask about his ability to pay for the horses.

K. Hatch testified that she saw Hoffman handwrite the bill of sale. She says that it did not have a price for the horses. Hatch testified that her daughter, Christian Hatch, gave Maybin only the bill of sale on June 24th, and K. Hatch gave Maybin the registration papers. Maybin says, however, that he only received the certificates of registration.

Mike Hughes, Hoffman's expert witness on horses and horse trading, testified that trading horses for work is not uncommon in the horse industry and has been going on forever.

On February 27, 2017, the bankruptcy court entered a final judgment for Maybin. The court found that the Hoffmans owed Maybin a substantial amount of money for his unpaid work and that the five horses transferred to him satisfied the amount owed to him. In addition, the court (a) declared that Maybin was free and clear of Hoffman's claims, and (b) that it lacked jurisdiction to invalidate the state court judgments, the claim for declaratory judgment, and the conversion claim. The Hoffmans appealed.

3.  *Standard of Review.*

The appellate court reviews the bankruptcy court's conclusions of law *de novo* and its factual findings for clear error.[1] The bankruptcy court's orders and findings of fact are binding on the parties in state court. The holdings of the bankruptcy court preclude the parties from relitigating these issues in any forum other than on a direct appeal.

4.  *Transfer of title.*

Hoffman has no interest in the horses. He is required to own or possess the property before it is transferred.

A bill of sale passes title immediately when it says that the seller has sold the described property to the buyer.[2] It evinces a sale and of the existence of title in the buyer, and the delivery of a valid bill of sale by an owner of personalty in most instances has the effect of completing a sale and vesting the grantee with title to the described property, even though the property is not at that time delivered and the price paid.

Maybin says that there was no sales contract between him and Hoffman. He says that the value of his work is $60,000. Hoffman did not pay him anything for five years.

The bill of sale says that the Hoffmans sold ten horses to Maybin. Hoffman claims that Maybin purchased the horses for $120,000. Maybin, however, was laid off – that is why he contacted Hoffman asking for work. No reasonable, disinterested person could conclude that

---

[1] Fed. R. Bankr. P. 8103, *Barron v. Countryman*, 432 F.3d 590, 594 (5th Cir. 2005).

[2] 65 Tex. Jur. 3d § 117.

Maybin could afford $120,000 in horses. Simply put, the Hoffmans owed a debt. To satisfy that debt, they transferred ownership of the horses to Maybin.

5.  *Fraudulent Transfer.*

Hoffman says that Maybin fraudulently transferred the horses. Hoffman asserts that the transfer of the horses to Maybin was for less than reasonably equivalent value and caused him to become insolvent – a constructive fraudulent conveyance.

To make this claim, Hoffman assumes that he had an interest in the horses at the time they were transferred to the Houston Society for the Prevention of Cruelty to Animals. But §548 only allows a trustee to avoid a transfer "of an interest of the debtor."[3] Hoffman must have had an interest in the horses at the time they were given to HSPCA in order to sustain a §548 cause of action. Texas law is unambiguous about what happens when the court makes a finding of animal cruelty: "[i]f the court finds that the animal's owner has cruelly treated the animal, the owner shall be divested of ownership of the animal ...."[4] It is only after the owner is divested of ownership that the court determines the appropriate disposition of the animals.

Hoffman did not have an interest in the property. Because Hoffman's claims under §§ 542, 548, and 550 all require ownership or possession of the property prior to the transfer, there was no property to convey fraudulently.

6.  *State Court Claims.*

Hoffman's federal lawsuits are an attempt to overturn the state court judgments. The bankruptcy court did not have subject jurisdiction to hear these claims, and neither does this court.

Deputy Gordon Welch served the Hoffmans with a warrant to seize their 211 horses. The warrant was issued by the Montgomery County Justice Court. At trial, the Justice Court held that the search warrant was valid and the Hoffman no longer owned the horses. The Justice Court gave the horses to the HSPCA. Hoffman appealed to the County Court at Law and lost. He next appealed to the United States Supreme Court, which denied *certiorari*. He then

---

[3] 11 U.S.C. § 548(a)(1).

[4] Tex. Health & Safety Code § 821.023(d).

filed for bankruptcy. During bankruptcy, Hoffman asked the court to overturn the state court judgments. It did not.

Somewhere in the middle of the civil lawsuits and bankruptcy proceedings the Hoffmans were each convicted of five counts of cruelty to animals in Montgomery County Court at Law Number One.

### A.     *Bankruptcy.*

The bankruptcy court correctly held that it did not have jurisdiction to invalidate the state court judgments, the claim for declaratory judgment, and the conversion claim under the *Rooker-Feldman*[5] doctrine because Hoffman's claims are inextricably intertwined with the merits of the state court proceedings. *Rooker-Feldman* bars federal courts from hearing collateral attacks on state court judgments, including claims that are "inextricably intertwined" with the merits of state court judgments.[6]

Like the bankruptcy court, this court cannot overturn the state court judgments. Hoffman's claims are nothing more than an attempt to relitigate the cases they lost. This is *Rooker-Feldman*'s purpose.

But even if *Rooker-Feldman* was inapplicable, Hoffman is precluded from litigating issues that have already been litigated. In Texas, issue preclusion applies when facts essential to a judgment have previously been fully litigated in a lawsuit involving the same adverse parties. Hoffman has already litigated these facts. He lost. His collateral attack fails.

### B.     *Constitutional Claims.*

After the Hoffmans were convicted of animal cruelty, they filed a civil suit against the county police officers, HSPCA, HSPCA employee, Montgomery County, county attorneys, and county judges. The civil defendants are sued in both their official and individual capacities under 42 U.S.C. § 1983 for Fourth Amendment violations.

The Hoffmans's claim is that these defendants either aided, assisted, or executed a defective warrant, and did not file a "certified schedule of property seized" and a "detailed list of the property seized" with the state court.

---

[5] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

[6] *See In re Ocean Tower LP*, No. 11-70776, 2014 WL 6686542, at *4 (Bankr. S.D. Tex. Nov. 25, 2014); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987).

As with their other claims, *Rooker-Feldman* applies. The Constitutional claims derive from the warrant issued by the Montgomery County Justice Court, which was later found to be valid. But even if *Rooker-Feldman* did not apply, this case must be dismissed because limitations expired before the civil case was filed. The Hoffmans's civil suit arises out of the June 24, 2015, warrant. Because Texas has a two year limitations period for § 1983 claims, the Hoffmans must have sued by June 24, 2017. They did not; this lawsuit was filed on July 31, 2017.

7. Conclusion.

The bankruptcy court did not err by finding that (a) Herman Hoffman owed Maybin a large of amount of money for his uncompensated work, (b) the transfer of the horses to Maybin satisfied that debt, and (c) that the state court judgments are not void. It will be affirmed.

Hoffman sued the county and other state actors too late. Had he filed within limitations, *Rooker-Feldman* would have lead to the same result. Hoffman's case is dismissed.

Signed on June 14, 2019, at Houston, Texas.

Lynn N. Hughes
United States District Judge